David Glen **JORDAN**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 8086.

United States Court of Appeals
Tenth Circuit.

July 1, 1965.

James T. Hays, Cheyenne, Wyo., for appellant.

John E. Green, Oklahoma City, Okl. (B. Andrew Potter, U. S. Atty., and Jack R. Parr, Asst. U. S. Atty., on the brief), for appellee.

Before BREITENSTEIN, HILL and SETH, Circuit Judges.

SETH, Circuit Judge.

Appellant was indicted on six counts for acquiring and obtaining marihuana, and transferring and selling marihuana in violation of 26 U.S.C.A. §§ 4744(a) (1), 4755(a) and 4742(a). He was tried by a jury in the United States District Court for the Western District of Oklahoma and was found guilty on each count. This appeal was thereupon taken.

The appellant raises several points on this appeal. The first issue relates to entrapment as appellant urges that the record shows and establishes it as a matter of law. The trial court instructed the jury on entrapment and submitted the issue to it. In order to consider the point, it is necessary to examine in some detail the two transactions upon which the indictment was based and which were developed during the course of the trial as shown by the record.

The first transaction was the sale of a pipe tobacco tin of marihuana to an informer. The record shows that this informer was acquainted with the appellant for a period of ten or eleven years prior to the sale, and the informer considered himself to be a friend of the appellant during this period. Their relationship after the indictment is not indicated in the record. The first pertinent conversation between the informer and the appellant took place on October 4, 1963. The record shows that at this time the informer had been employed for about a year by the Federal Narcotics Bureau. He was paid ten dollars a day for each day that he worked. The record shows that it was his duty to locate sources of marihuana and to make purchases. As appellant stated, this was "what he was being paid for." The informer, although testifying that these were his general duties, on cross-

examination did not admit that this was his intention as regards this appellant. He testified that the matter came up during the course of conversation between the two of them, and he testified directly that it was not his intention to seek out the appellant as a source of marihuana when he first talked to him on October 4, 1963. The record shows that in the initial conversation of the 4th the informer asked the appellant whether he had any "weed" for sale. The informer testified " * * * and I asked him if he did and he said he wasn't sure whether he did or not. Said he would let me know the next day whether he had any for sale or not." This visit at the house of appellant's brother apparently lasted something less than an hour. The informer saw the appellant the next day at the informer's house, and at this time the informer testified that the appellant " * * * agreed to see about getting some," and further the informer testified that the appellant did not know whether he could get it or not. The record shows that the appellant after the meeting on the evening of the 5th called the informer, and he then went in his car to pick up the appellant. The informer testified that at the time he went to pick him up, the appellant had already " * * * notified me earlier that he had it to sell." Thus the appellant had already agreed to sell at the time the informer picked up the appellant, and they went out to a place in the country where appellant asked the informer to stop, left the car, and picked up the can of marihuana from the ground near a utility pole.

The second incident relevant to the issue of entrapment concerns the sale by the appellant to an agent of a larger quantity (835 grams) of marihuana, which took place on April 5, 1964. As to this purchase the record shows that an undercover agent of the Federal Narcotics Bureau had contacted a woman in Oklahoma City and represented to her that he had underworld connections and that he had money to acquire narcotics.

The woman during the course of the transaction did not know that he was a narcotics agent, but she was paid by the agent for her help in making contact with prospective sellers. The woman called the appellant and arranged for the initial meeting between the appellant and the agent which took place on April 2, 1964. The agent made the same representations to the appellant that he had previously made to the woman who introduced them. Following the initial meeting, the agent requested the woman to keep in touch with appellant, and through her a second meeting was arranged. It appears that the woman had a series of telephone conversations with the appellant during this period in the absence of the agent. On April 5th, the second meeting was arranged by the woman at which time the appellant came to the agent's car where he and the woman were seated. Arrangements had been made for the agent at this meeting to purchase three cans of marihuana. Just how this was done is not shown in the record. The agent testified that the appellant told him he was ready to deal and at the same time asked the agent whether he wanted more than three cans. The agent responded that he would be interested in buying more and the appellant told him he had a kilo he would like to sell. Appellant described this marihuana as having been pressed into the form of a brick; stated that it was of high quality from Mexico, and he would like to sell it for $200.00, which was a "very, very good deal." Appellant further represented to the agent that at this rate it would be the equivalent of $10.00 per can, that there was a shortage of marihuana at the time, and a can would be priced at $25.00 to $30.00. The agent said he would like to look at it and the appellant left the car, went behind the house in front of which they were parked, and returned with a package which contained the 835 grams of marihuana. The sale was made and the appellant then asked the agent if he was still interested in heroin as they had discussed, and the appellant told the agent

he would have some in a few days, quoting a price and indicating his profit.

As to both of the sales, the background of which is described above, the issue does not appear as it did in Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848, where the evidence established entrapment as a matter of law, and consequently the Court held it should not have been submitted to the jury. Instead the case of Masciale v. United States, 356 U.S. 386, 78 S.Ct. 827, 2 L.Ed. 2d 859, decided at the same term, is comparable to the one at bar. In this cited case there was testimony by the appellant during the course of the trial relating to the entrapment issue and there developed a conflict of testimony on this point. The Court held that the trial court had properly submitted the issue to the jury. In the case at bar, there was no direct conflict in the testimony for the reason that the appellant did not testify and no witnesses were called on his behalf on this issue. The testimony of the informer as to the October 5th sale leaves little doubt, but the testimony of the agent and the existence of undisclosed telephone conversations between the woman who arranged the meetings with the appellant developed facts the import of which could possibly lead to differences of opinion. These were proper subjects for the jury's determination.

■■ Thus the record does not show as to either of the sales that entrapment was established as a matter of law, as the appellant contends. ・ This being the case, even though it could be said that there was *no* entrapment as a matter of law, the appellant could not claim to have been prejudiced by reason of the submission of the issue to the jury. This point was considered by the court in Marshall v. United States, 258 F.2d 94 (10th Cir.), rev'd on other grounds 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250, where it was held that the submission was improper because there was only the undisputed testimony of the Government witnesses which showed there to have been no entrapment. The court

held however that the appellant could claim no prejudice because the submission could but give him an unwarranted advantage. The Supreme Court in Lopez v. United States, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462, considered the issue of entrapment under a similar state of proof, and stated that entrapment had not there been shown as a matter of law and the trial court might well have been justified in refusing to instruct the jury at all on entrapment.

As to the standards for entrapment, as frequently occurs there is no difficulty in stating the doctrine, but the problem arises when applying it to the facts at hand. It would seem only necessary to cite Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413, where the Supreme Court defined the principles and the doctrines relating to entrapment. The Court there laid down the test as to whether the criminal design originates with the officers and whether they implant in the mind of an innocent person a disposition to commit the crime and induce its commission, or whether the officers merely afforded opportunities for the commission of an offense by the person charged who then had such criminal propensity. The Supreme Court considered the issue more recently in Lopez v. United States, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462. The doctrine was defined by this court earlier in Ryles v. United States, 10 Cir., 183 F.2d 944; Martinez v. United States, 10 Cir., 300 F.2d 9; James v. United States, 10 Cir., 309 F.2d 744; Lucero v. United States, 10 Cir., 311 F.2d 457; Wood v. United States, 9 Cir., 317 F.2d 736; Maestas v. United States, 10 Cir., 341 F.2d 493. When these standards are applied to the facts preceding the sales above described, it must be held that the submission of the issue to the jury was not reverible error.

The appellant at the conclusion of the trial submitted a requested instruction relating to entrapment. The court gave an instruction of its own which it described as being in substance the one requested by the appellant. Appellant

did not object to the instruction given by the court on this issue and made no requests for any additional instructions. Thus as the record stands the appellant agreed to the submission of the issue of entrapment to the jury, and this submission to be under the instructions as given by the court. As above held, the issue was one properly submitted to the jury, and there was no error.

Appellant urges that the transfer tax liability and violation based thereon was not proven and urges also that the judge's comment relating to the possible transfer tax receipts was prejudicial. The statement of the judge relating to the tax receipt was more one of inquiry or suggested procedure than it was in comment, and we find nothing improper in it.

The statute contains provision for the notice and demand form in order that the official order form covering the transfer may be produced if it is in existence. The request also provides the basis for the presumption which arises upon the failure by the person charged to produce the order form within the time specified in the notice. The demand to produce was properly admitted and the court's instruction with reference to the demand and the implications from it were proper. We have previously held in Calderon v. United States, 10 Cir., 269 F.2d 416, that the notice and demand form may be admitted in evidence, and that the period of eight days for the production of the order form was not unreasonable. This matter is fully treated in the cited case and no further statement would seem to be here required. In the case at bar, the demand for production of the order form was served on the appellant some two weeks prior to the trial, and this was a reasonable period. The statute refers to "reasonable notice and demand." 26 U.S.C.A. § 4744(a). The proof otherwise relating to this issue was entirely adequate.

The appellant also urges that the tax was not due on the transfers covered by counts one and two, consequently there was no violation. In the case at bar there is no evidence as to the source of the marihuana, and the only reference is the statement by the appellant as to the 835 grams that it originated in Mexico. There was no evidence to rebut the statutory presumption arising from possession. Appellant urges that Ortiz v. United States, 329 F.2d 381 (5th Cir.), is applicable, but in the cited case, it affirmatively appeared that the person charged had himself smuggled the marihuana into the United States, but in the case at bar, as indicated, there is no evidence to rebut the statutory presumption. The evidence as to appellant's possession is clear. Garcia v. United States, 250 F.2d 930 (10th Cir.). The facts in the cited case as to the source are comparable to the case at bar, as are the accused's statements as to source.

Affirmed.