**Victor A. ENCISO, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 20820.**

United States Court of Appeals
Ninth Circuit.

Jan. 3, 1967.

Paul K. Duffy, Culver City, Cal., for appellant.

Manuel L. Real, U. S. Atty., John K. Van de Kamp, Asst. U. S. Atty., Chief Crim. Div., Robert L. Brosio, Asst. U. S. Atty., Asst. Chief, Crim. Div., Gabriel

A. Gutierrez, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before DUNIWAY and ELY, Circuit Judges, and POWELL, District Judge.

DUNIWAY, Circuit Judge:

Enciso was found guilty by a jury on each count of a six count indictment. Each count charged a violation of 21 U.S.C. § 174. He was sentenced to 10 years on each, all sentences concurrent. The evidence is that on three occasions Enciso sold heroin to one Peterson, 3.8 grams on June 16, 1965 for $50.00, 8.4 grams on July 14, 1965 for $50.00, and 12.2 grams on July 30, 1965 for $100.00.

■ The sole defense was entrapment. Peterson's testimony, corroborated in part by that of government agents, fully supports the conviction. Enciso took the stand, admitted the sales, but endeavored to show that he was entrapped. On appeal, his principal contention is that the evidence shows entrapment as a matter of law. We think not. It is true that the picture presented by the record is not a pretty one. Peterson, who had been an addict for many years, was convicted for forging narcotic prescriptions sometime before 1952, and met Enciso while both were inmates of the California state prison at Chino. He did not see Enciso again until late in 1962. Peterson was released in 1953, and was later convicted of the sale of narcotics and sentenced to 20 years in federal prison. This was reduced to 5 years, which he served. He was released in August of 1962. In October 1964, he was arrested on another federal narcotics charge. He was arraigned, but at the time of Enciso's trial, in September, 1965, had not been tried. Since the October 1964 arrest he had been acting as an agent for the Federal Bureau of Narcotics. He agreed to so act when the arresting agent of the Bureau told him that anything he could do would be brought to the attention of the U. S. Attorney. No promises were made to him, but prosecution has been held in abeyance because of his cooperation. There had been six or seven other cases in which he had been an agent that resulted in the arrest of other individuals. Peterson had every reason to entrap Enciso. But this does not establish, as a matter of law, that he did so.

Such use of informers has been making the courts uncomfortable for a long time. But the courts have also had to face up to the practical necessities of law enforcement, and have consistently refused to reverse convictions because they are based upon the testimony of such informers. Very recent examples are Hoffa v. United States, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 and Osborn v. United States, 385 U.S. 323, 87 S.Ct. 429, 17 L.Ed.2d 394, both decided December 12, 1966. See also Lewis v. United States, 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312, decided the same day.

Stated most favorably to the government, the testimony of Peterson is that Enciso called him on the telephone and left his number. When Peterson called back, Enciso asked if Peterson was using drugs. Peterson said he was not, but wanted to make some money. Enciso said that that was what he had in mind, and that he was anticipating having some to sell. Peterson said he was interested in buying when Enciso was ready to sell. Peterson followed up this call with several calls. Finally, Enciso called Peterson and said he would soon be ready. The first sale was then arranged by Enciso, who told Peterson where and when to meet him. Enciso picked him up, took him to a house, and sold him the heroin. Later, Peterson called Enciso and complained that the quantity sold was less than it was supposed to be. Enciso said he would straighten that up. On July 12, Enciso told Peterson he would have some stuff the next day. After more phone calls, the second sale took place, in substantially the same way. On that occasion, both of them had a "fix," using a needle and eye dropper brought by Enciso. The third sale came about in the same way. Peterson's description of the conversations indicated that Enciso was, to say the least, a willing seller.

Enciso admitted that the transactions occurred, and much as Peterson described

them. His statement of the conversations, however, is quite different. If believed, they would support a finding that Enciso did not want to sell to Peterson, that Peterson initiated everything, that Enciso refused to sell to him, and was trying to go straight and avoid narcotics, that Peterson kept after him, claiming that he was sick and needed the drugs, and that Enciso, who felt sorry for him, finally yielded to him importunities.

Entrapment is usually a question of fact, not of law. See Masciale v. United States, 1958, 356 U.S. 386, 78 S.Ct. 827, 2 L.Ed.2d 859. It is one of law only where the evidence on the question is substantially undisputed. Sherman v. United States, 1958, 356 U.S. 369, 78 S. Ct. 819, 2 L.Ed.2d 848. Here the evidence is in conflict. It would support a finding that Enciso was predisposed to commit the offense. See Sorrells v. United States, 1932, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413, 86 A.L.R. 249; Stein v. United States, 9 Cir., 1959, 263 F.2d 579; Bloch v. United States, 9 Cir., 1955, 226 F.2d 185. The verdict is supported by the evidence.

It is claimed that the court erroneously curtailed the cross-examination of Peterson. The incident complained of occurred when Peterson said that he had been an agent in six or seven cases that had resulted in arrests. He was asked: "Now, in those six or seven cases, did these people all call you and ask if you wanted some narcotics?" The court remarked "Now you are getting too far removed. Are you objecting to that?" Government counsel said "yes." The court said: "On what ground?" Counsel replied "it is immaterial." The objection was sustained. Counsel for Enciso said he wished to "show a course of conduct of this witness." The court replied "No. Objection sustained. What he did in this case is important."

The court has a considerable discretion as to the extent of cross-examination. One of the ways in which it is frequently exercised is to avoid extensive exploration of collateral matters. We think that this is such a case, and that the court's discretion was not abused. There was ample evidence developed on cross-examination to support the argument that Peterson should not be believed. See Glasser v. United States, 1942, 315 U.S. 60–83, 62 S.Ct. 457, 86 L. Ed. 680; Robinson v. United States, 9 Cir., 1959, 262 F.2d 645; Todorow v. United States, 9 Cir., 1949, 173 F.2d 439. It is also urged that the court erred in refusing to permit counsel to examine Peterson's arms, to show recent use of narcotics, after Peterson denied taking narcotics "this morning." This came after Peterson said that he had taken narcotics a week before, by injection in his left arm. Counsel's point was sufficiently made, and discretion was not abused.

Affirmed.