**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Angel Jose PADILLA, Defendant-Appellant.**

**No. 25362.**

United States Court of Appeals, Ninth. Circuit.

Nov. 2, 1970.

Richard J. Massa (argued) of Werchick & Werchick, San Francisco, Cal., for appellant.

Eric A. Nobles (argued) Asst. U. S. Atty., Robert L. Meyer, U. S. Atty., David R. Nissen, Chief, Criminal Division, Darrell W. MacIntyre, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before MERRILL and DUNIWAY, Circuit Judges, and SWEIGERT *, District Judge.

DUNIWAY, Circuit Judge:

Convicted under two charges of violating 21 U.S.C. § 174 and one of violating 26 U.S.C. § 4705(a), Padilla appeals. We affirm.

The picture presented by this record is not a pretty one. It makes us just as uncomfortable as we were in Enciso v. United States, 9 Cir., 1967, 370 F.2d 749, and in Matysek v. United States, 9 Cir., 1963, 321 F.2d 246. But we feel compelled to affirm by prior decisions. There was but one transaction—a sale of heroin by Padilla to a federal narcotics agent. Here is what happened.

In February or March, 1969, one Frances Martinez was arrested and charged with a federal offense, a sale of narcotics to narcotics agents. She then had a conversation with narcotics agent Coonce, who asked her if she could "get a sale on" Padilla. She replied that she could help him. She hoped that helping Coonce would help her. Coonce said that he would tell the United States Attorney about it, but made no other promise. Martinez was herself a heroin addict, and was using heroin on March 7. She was also ill with cancer. She had known Padilla for about two years, and had seen him sell heroin to others three or four times. Padilla was a long-time heroin user.

On March 7, federal narcotics agent Medina drove Martinez to Padilla's home. The purpose was to have her arrange a sale of heroin by Padilla to Medina. She went in alone, told Padilla she was ill, and asked if he could buy heroin for her or if he had any. He said that he did not, but could get it for her. Padilla made a couple of phone calls. The two then joined Medina and proceeded to Padilla's source of supply. Medina gave Padilla $100. Padilla left, and shortly returned with heroin. He

---

* Honorable William T. Sweigert, United States District Judge, Northern District of California, sitting by designation.

**964**

refused to give it to Medina until he could "get some of it out," to which Medina agreed. All three went to Martinez's apartment, and Padilla took some of the heroin and gave himself a fix. All of the foregoing is taken from the testimony of the informer and the narcotics agents.

Padilla testified that on March 7 he had not used heroin for about four weeks, and at first refused Martinez's suggestion. He told her that he was "on withdrawing" and "would rather not ever fool with it." She then said "she was sick and needed a fix real bad," and if he would get heroin for "her cousin" she would get a fix out of it. Her eyes were watering, her nose was running, and sweat was breaking out on her; these are withdrawal symptoms. She told him that she would get him a fix too. She begged him for twenty-five minutes to get her heroin. He finally agreed to get the heroin because of her condition, and because he was to get a fix.

 This is precisely the kind of conduct by government agents and informers condemned by Judge Weigel in his concurring opinion in *Matysek, supra.* If Padilla's part of the story had come from the government's informer and witnesses, we would hold that there was entrapment as a matter of law. Sherman v. United States, 1958, 356 U.S. 369, 376, 78 S.Ct. 819, 2 L.Ed.2d 848. But it did not. The jury did not have to believe Padilla. Masciale v. United States, 1958, 356 U.S. 386, 388, 78 S.Ct. 827, 2 L.Ed.2d 859. Martinez denied that anything was said about getting narcotics for herself or about Padilla's use of heroin, and denied that she pleaded with him. Her testimony indicates no reluctance to sell on Padilla's part. Medina testified to statements by Padilla that indicated that the latter was willing, indeed more than willing, to sell, and wanted an opportunity to sell more. Under *Masciale, supra,* the question of entrapment was for the jury. See also *Enciso, supra; Matysek, supra;* Brown v. United States, 9 Cir. 1967, 372 F.2d 478.

Robinson v. California, 1960, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758, is not applicable here. Ramos v. United States, 9 Cir., 1970, 432 F.2d 423.

The "presumption" in 21 U.S.C. § 174 is valid. Turner v. United States, 1970, 396 U.S. 398, 405–418, 90 S.Ct. 642, 24 L.Ed.2d 610; United States v. Fraser, 9 Cir., 1970, 431 F.2d 876; United States v. Parker, 9 Cir., 1970, 428 F.2d 488, 490–491; United States v. Hampton, 9 Cir., 1970, 422 F.2d 867.

 It was not error for the court to exclude the proffered testimony of a state law enforcement officer, who was to give opinions as to (1) whether addicts know the origin of their narcotics and (2) the usual reaction of an addict to an offer of a fix. We doubt that (1) would be a proper subject for expert testimony. As to (2), expert testimony would seem superfluous. The trial court did not abuse its discretion in excluding the proffered evidence, assuming that it would not have been error to admit it. See Mull v. United States, 9 Cir., 1968, 402 F.2d 571, 574–575, and cases cited.

Affirmed.