UNITED STATES of America,
Appellee,

v.

Geraldine GRIFFIN, and Odell Andrews,
Appellants.

No. 25885.

United States Court of Appeals,
Ninth Circuit.

Nov. 27, 1970.

Rehearing Denied Jan. 6, 1971.

Burton Marks, of Marks, Sherman & London, Beverly Hills, Cal., for appellants.

Robert L. Meyer, U. S. Atty., David R. Nissen, Asst. U. S. Atty., Chief, Criminal Division, Eric A. Nobles, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before BARNES, HUFSTEDLER and TRASK, Circuit Judges.

BARNES, Circuit Judge:

Appellants Griffin and Andrews were convicted under a ten count indictment based upon four sales of heroin during March and April of 1969. Griffin was charged in all counts with violations of either 21 U.S.C. § 174 (Concealment and Sale of Narcotics), or 26 U.S.C. § 4705(a) (Illegal Transfer of Narcotics). Appellant Andrews was charged only in Count Ten with violating 21 U.S.C. § 174 (Concealment and Sale of Narcotics).

Upon a motion by Andrews, appellants' trials were severed and Griffin tried first. Both trials were before a jury and resulted in conviction of each defendant on all applicable counts. A joint appeal was had to this Court. Our jurisdiction for this appeal rests on 28 U.S.C. § 1291.

This case is characterized by a long and intricate factual background about which there exists certain conflicts. There is no dispute however, but that Griffin made four sales of heroin which were arranged by an informant, Simmons, to undercover agent Henry. Griffin and other defense witnesses testified that she knew Simmons for three years and that he called her several times over a period of two weeks before the first sale. She claimed that he repeatedly asked her to procure heroin and sell it to him; that she repeatedly refused; that he told her that he was sick and that he

would give her a profit on the transaction; and that she continued to refuse his requests until the fourth call.

Simmons, the government informant, and agent Barnes of the Federal Bureau of Narcotics testified that they received Griffin's name from a man named Robert. Simmons stated that he did not recall knowing her previously and that she agreed to make the sale on the day upon which he first contacted her (March 3, 1969).

There is agreement that Griffin called Simmons back on March 3 and arranged to make the sale of "half a piece" of heroin. She met Simmons in a parking lot and he introduced agent Henry as the man who wanted the heroin. Appellant Andrews was observed by agents driving Griffin to the meeting and then to the apartment of her source in his green Cadillac. Agent Henry paid $175.00 to Griffin and received a package of a substance later identified as heroin.

The second sale took place on March 20, 1969. After being informed of a second possible sale, Henry called Griffin and arranged for a meeting at the same place. Griffin testified that she took a bus to the meeting, made the sale to Henry and was driven home. Government agents Barnes and Henry testified that Griffin arrived at the lot in a Mercury and told Henry that she would have to contact her source to obtain the half-ounce of heroin. She made a telephone call and told Henry that the heroin was enroute. Henry claimed that they then discussed a possible purchase of a pure ounce of heroin for $625.00 in the future. The previously mentioned Cadillac then pulled into the lot and Griffin said, "There is my man now. Wait. I'll be right back." She entered the car and returned a short time later with the heroin. The sale then occurred.

After an abortive attempt to set up a sale on the previous day, Griffin called Henry on March 27, 1969, and told him to meet her that day in a restaurant near the parking lot. She sold him an ounce of heroin for $325.00 and offered to procure three ounces for him in four or five days.

On April 3, 1969, Griffin called Henry, offered to sell him the three ounces of heroin at $625.00 per ounce and told him to meet her at the Midtown Shopping Center. When he met her at the designated place, she told Henry that she did not have the heroin and that her man had it near the Safeway Store on Pico and Fairfax. She then drove to the market in a car rented by Andrews and borrowed from Andrews' common-law wife, with Henry following her in his own car. Griffin testified that she did not tell Henry the location of the second meeting place but, instead, only told him to follow her. She further testified that she called Andrews who was staying near the Safeway Store and asked him to buy her some dog food and wait for her outside the market.

Henry testified that he told another agent at the shopping center that he was going to follow Griffin and informed him of their destination. Agent Carter, who was called to testify as to a handwriting examplar of Andrews, said, however, that he knew that he was to proceed to the Safeway after the phone calls of that morning.

Henry testified that after reaching the market, both parked their cars and Griffin walked over to his. According to his testimony, she said that she saw her "man" and pointed to Andrews who was standing near to the door of the market. She then walked over to Andrews in front of the store and was handed a large brown grocery bag by him. She then returned to Henry's vehicle and placed the sack on the floor of the car. After handing the heroin to Henry in a rubber condum, Henry got out and gave the signal for the arrests of Griffin and Andrews.

Griffin denied that she pointed to Andrews or called him "my man." She claimed that she walked past Andrews and into the market where she bought cigarettes. While walking out of the

market, she removed the heroin from inside her slacks and then picked up the bag from the cart and walked back to Henry's car. She also denied that she handed the heroin to Henry.

Agent Carter testified that Griffin and Andrews walked into the market together. Finally, Griffin testified that one of the agents told her while driving from the arrest that her telephone had been tapped. The government agents denied this.

Because of the large number of contentions which appellants raise upon appeal we will dispose of many summarily, but will discuss the more meritorious claims in some depth.

## I. *Griffin's Appeal*

### 1. *Entrapment as a Matter of Law.*

■ ■ Appellant Griffin maintains that the facts of her case establish entrapment as a matter of law. This defense is found only where the jury could not with reason find otherwise than that appellant was not a person predisposed to commit the crimes of which he stands convicted, but was an otherwise innocent person seduced into the act by Government agents. Robison v. United States, 379 F.2d 338, 343 (9th Cir. 1967); Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210 (1932). We need not and do not reach the question of whether the facts elicited in the testimony of the defense witnesses would, if true, constitute entrapment as a matter of law. Our earlier summation of the relevant facts demonstrates that there are definite conflicts in the testimony on the issue of how Griffin began selling heroin to Agent Henry. Under our decisions, the resolution of such conflicting assertions of fact relevant to the entrapment issue is a credibility question for the jury. Robison, *supra*, at p. 343. In Sherman v. United States, 356 U.S. 369, 373, 78 S.Ct. 819, 821, 2 L.Ed.2d 848 (1957), the Supreme Court was careful to note that in finding entrapment as a matter of law on the facts of that case, they were "not choosing between conflicting wit-

nesses, nor judging credibility." The case at bar is similar to Notaro v. United States, 363 F.2d 169 (9th Cir. 1966) in many respects. In this case, there were sharp conflicts between the testimony of the appellant and the government informant. We wrote:

"The credibility of each was put in question, and their demeanor and attitude, not observable to us here, was subject to scrutiny by both the judge and jury. When, as here, the result of the trial was so dependent upon the conflicting testimony of two witnesses and when the trial judge refused to disturb the jury's determination in spite of his own expressed leaning toward an opposite conclusion, we cannot bring ourselves to interfere." Notaro v. United States, *supra*, at p. 173, citing Marin v. United States, 324 F. 2d 66 (9th Cir. 1963), cert. denied 379 U.S. 806, 85 S.Ct. 91, 13 L.Ed.2d 73 (1964).

### 2. *Instructions on Entrapment.*

■ Appellant Griffin also contends that the instruction given by the trial court on the entrapment issue is fatally defective in its use of the term "offer." The instruction to which objection is made reads in part:

"The defendant (Griffin) asserts that she was the victim of entrapment after the crime charged in the indictment.

"Where a person has no previous intent to violate the law, but is induced or persuaded by law enforcement officers or agents to commit a crime, he is the victim of entrapment, and the law as a matter of policy forbids a conviction in such a case.

"On the other hand, where a person already has the readiness and willingness to break the law, the mere fact that Government Agents provide what appears to be a favorable opportunity is no defense, but is a lawful entrapment. When, for example, the Government has reasonable grounds for believing that a person is engaged in

the illicit sale of narcotics, it is not unlawful entrapment for a Government Agent to pretend to be someone else and to offer, either directly or through an informer or other decoy, to purchase narcotics from such suspected person.

"If, then, the jury should find beyond a reasonable doubt from the evidence in the case that, before anything at all occurred respecting the alleged offense involved in this case, the defendant was ready and willing to commit crimes such as charged in the indictment, whenever opportunity was offered or afforded, and that Government officers or agents did no more than offer the opportunity, then the jury should find that the defendant is not a victim of entrapment.

"On the other hand, if the evidence in the case should leave the jury with a reasonable doubt whether the defendant had the previous intent or purpose to commit any offense of the character here charged, and did so only because he was induced or persuaded by some officer or agent of the Government, then the jury should acquit the accused." (V Reporter's Transcript, pp. 538–39.)

■ This instruction clearly advises the jury that the predisposition required must exist before any offer is made. In addition, repeated offers by Government Agents are not exculpating *per se*. Many cases have noted that there is a "natural hesitancy of one acquainted with the narcotics trade" to sell. *Sherman, supra,* 356 U.S. at p. 371, 78 S.Ct. at p. 820. In addition, such a test would be far too rigid and mechanical. The inquiry should rather go to the nature and quality of the offer, the relationship of the parties, the over-all circumstances and other indicia of inducement or predisposition that those experienced in human affairs would consider in deciding such a question. We find that the instruction given by the trial court requires the jury to consider the relevant factors while channeling their deliber-

ation within the applicable legal standards and was proper.

3. *Submission of Entrapment Issue to Jury.*

■ Griffin also contends that the principles announced in Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed. 2d 908 (1964) in regard to the voluntariness of confessions should be applied to the entrapment issue. More specially, the claim is that submission of the entrapment issue to the jury may result in prejudice to the defendant because they may be reluctant to acquit an admitted law breaker. We express no opinion as to the merits of this contention. The Supreme Court held that this issue is for the jury rather than the court in Sorrells, *supra,* and this Court has consistently followed that position. See Erwing v. United States, 394 F.2d 829, 830 (9th Cir. 1968), Robison, *supra,* 379 F.2d at 346, and Pulido v. United States, 425 F.2d 1391, 1393 (9th Cir. 1970).

4. *Motion for New Trial Based on Carter's Testimony.*

■ Appellant Griffin next contends that the trial court abused its discretion by its failure to grant her motion for a new trial after the discovery of testimony given by agent Carter during Andrew's trial. She further contends that the Government withheld evidence material to her defense in violation of the principles announced in Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L. Ed.2d 215 (1963). According to Pitts v. United States, 263 F.2d 808, 809 (9th Cir. 1959), in order to establish sufficient grounds for a new trial based on newly discovered evidence, the defendant must show *inter alia,* that the new evidence must not be merely cumulative or impeaching, but must be material, and it must be so material that it would probably produce an acquittal. (*Id.* at 810.) While Carter's testimony may have contradicted that of other agents in some details and thus have lessened their credibility, its basic thrust was inculpatory. He saw Griffin holding the sack

which contained the heroin, and his testimony surely had no probative value on the issue of entrapment. The jury had substantial evidence upon which to base its verdict against Griffin and we can find no possible effect that Carter's testimony might have had on that verdict.

The only other issue upon which Carter's testimony had effect was in lending some weight to appellants' charge of an illegal wiretap. While his testimony is unclear, Carter seems to have testified that the agents knew they were going to proceed to the Safeway store after the phone calls earlier that day. The other agents testified that they learned of the second meeting place after Henry told one of them in the parking lot that he was going to follow Griffin there. Andrews has failed to show that any evidence upon which the jury based its verdict was the result of the alleged illegal wiretap.

We can dispose of the *Brady* claim that evidence was withheld more simply. Appellant Griffin puts forward no evidence that the prosecution suppressed the testimony of Carter. The government did not know and had no reason to know that Carter (one of the agents who participated in the arrest), had any evidence of value to relate. He did not prepare a report nor did his name appear in the reports of other agents on the arrest. If the intent of the prosecution was to suppress his testimony, it surely would not have produced him to testify on handwriting exemplars at Andrews' trial. In addition to the absence of any purposeful withholding of information, we found above that Carter's testimony was not material either to Griffin's or Andrews' guilt or punishment. See *Brady, supra,* 373 U.S. at p. 87, 83 S.Ct. 1194.

5. *The 21 U.S.C. § 174 Presumption.*

■ Appellants challenge the trial court's use of the instruction on the presumption in 21 U.S.C. § 174 on the grounds that some heroin is domestically synthesized from morphine. The Supreme Court considered this argument in Turner v. United States, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970) and upheld the validity of the presumption as applied to the possession of heroin, which is here involved.

II. *Andrews' Appeal.*

1. *Use of Griffin's Statements Against Andrews.*

■ Andrews contends for himself that the use against him of out-of-court statements made by Griffin constituted prejudicial error and violated his right to due process and confrontation. First, he claims that the admission of Griffin's statements was unreasonable because there was no foundational showing of the existence of a common scheme or plan. It is clear that such statements are admissible only when there is independent evidence linking the declarant to the defendant. Judge Waterman of the Second Circuit stated the applicable principles in United States v. Ragland, 375 F.2d 471, 476–477 (2nd Cir.1967):

"[O]nce some conspiracy, agency, or concert of action is independently shown * * * hearsay statements made in furtherance of such relationship * * * are admissible. However, the independent evidence need not, as appellant suggests, be so clear and convincing as to *compel,* absent contradiction, a finding of the fact sought to be proved. (Emphasis in original.)

"The threshold requirement for admissibility is satisfied by a showing of a likelihood of an illicit association between the declarant and the defendant although it might later eventuate that the independent evidence so admitted proves to be insufficient to justify submitting to the jury the issue of defendant's alleged guilty involvement with declarant. If the issue is submitted to the jury it then becomes the function of the jury, not the trial judge, to determine whether the evidence was credible and was convincing beyond a reasonable doubt. * * * In determining preliminary

questions of fact relating to admissibility of the hearsay the trial judge has wide discretion * * * and need only be satisfied, if he accepts the independent evidence as credible, that that evidence is sufficient to support a finding of a joint undertaking.

"Moreover, the independent evidence of illicit association may be totally circumstantial * * * and may, as here, include evidence of acts of the accused occurring *after* the time at which the association is alleged to be in existence. Nor is it necessary in this circuit that such independent evidence be inconsistent with all reasonable hypotheses of innocence, as appellant suggests, either to legitimate its admissibility * * * or to support a conviction. It is true that an association with an alleged conspirator, without more, is insufficient to establish the necessary foundation for the admissibility of the incriminating statements. The accused must 'in some sort associate himself with the venture, * * * participate in it as in something that he wishes to bring about * * * [or] seek by his action to make it succeed.' " (Citations omitted.)

■■ The independent evidence introduced to show the required relationship consists of (1) testimony that Griffin used a car rented by Andrews to make the April 3rd sale, (2) testimony that the green 1968 Cadillac driven by Andrews was used by Griffin during prior transactions and (3) testimony that Andrews gave the paper bag which was subsequently found to contain heroin to Griffin outside the Safeway. This evidence of a common scheme or plan was sufficient to warrant the admissibility of Griffin's out-of-court statement.

Second, Andrews claims that the admission of these statements violates his right to confrontation. Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1967) is not on point because these statements which are made in furtherance of a common scheme are admissible as an exception to the hearsay rule, while the statements in *Bruton* were not. Nor do these statements violate the requirements of California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), either. The Supreme Court said that:

"[W]here the declarant is not absent, but is present to testify and to submit to cross-examination, our cases, if anything, support the conclusion that the admission of his out-of-court statements does not create a confrontation problem." *Id.* at p. 162, 90 S. Ct. at p. 1937.)

The record shows that Griffin appeared as a defense witness for Andrews and answered all questions asked. Andrews' attorney asked her neither to affirm nor deny the statements in question. There was full opportunity to confront Griffin but no attempt was made to impeach her out-of-court statement.

■ Andrews also insists that the instructions on the common plan or scheme were vague and ambiguous as to the correct standard for the burden of proof. It must be remembered that such instructions must be viewed as a whole. The trial court was careful always to make clear to the jury that independent preliminary facts must be found before they could find a common plan or scheme. Furthermore, the proper standard on burden of proof was carefully explained to the jury:

Before the declaration of the member of a scheme or plan can be considered by you as evidence against one charged with participating in the common plan, it must be established beyond reasonable doubt that the plan existed and that the accused was a party to it at the time the declarations were made." (VI Reporter's Transcript, 1031).

Finally, although we are mindful of the danger that a jury, in violation of its instructions, may consider the out-of-court statements as well as the independent evidence in determining the preliminary fact of the existence of a common

scheme or plan, we believe that any change in the allocation of existing functions between judge and jury must await direction from the Supreme Court.

### 2. *Proof of Prior Felony Conviction.*

Appellant Andrews' final contention is that the introduction of his prior felony conviction (which conviction was then undetermined on appeal) to impeach his testimony, constituted prejudicial error and a denial of due process. Subsequent to the trial of the case at bar, Andrews' prior conviction on a marijuana charge was reversed on the *Leary* rationale, and remanded to the trial court for further findings on the issue of knowledge by Andrews of the importation of the marijuana. The trial court vacated the initial judgment and then reimposed the judgment of conviction. This second conviction is presently on appeal. After a conference in chambers on the admissibility of evidence of the appellant Andrews' prior conviction (then on appeal), when the question was asked of Andrews (had he ever been convicted of a felony), there was no objection interposed. [R.T. 959] In United States v. Hoffa, 367 F.2d 698, 713, 714 (7th Cir. 1966), the Court stated:

"An additional reason for finding no prejudicial error in the impeaching question is that Hoffa's experienced and able counsel did not object to the question when it was asked. In fact, in his closing argument to the jury, counsel said:

'But the first thing that Mr. Bittman [Government Counsel] went to

for Mr. Hoffa like, a grip, and *it is proper cross examination—I didn't object*—"Are you the James R. Hoffa who was convicted in Chattanooga?"' [Emphasis supplied.] Counsel for Hoffa then told the jury that the Tennessee conviction was on appeal, and that the Government's use of it for impeachment purposes indicated a lack of confidence in both the Tennessee conviction and in the instant prosecution.

"Several of defendants' trial counsel including counsel for Hoffa had previously conferred with the trial judge requesting advice as to his ruling should any former convictions of the defendants be brought out on cross examination. The trial judge informed them that he would permit the Government to bring out the prior convictions on the authority of *Empire Packing* [United States v. Empire Packing Co., 7 Cir., 174 F.2d 16]. It is, therefore, quite apparent from this and counsel's above comments to the jury that counsel for Hoffa deliberately decided not to enter an objection to the impeaching question. We hold that it was not reversible error to ask witness Hoffa if he had previously been convicted." *Id.* at pp. 714–715.

During the discussion in chambers between counsel and the trial judge, after defendants' counsel had been advised that the court would follow the majority rule expressed in the Circuits and permit the impeaching questions to be asked over defendants' counsel's objection, counsel for defendant Andrews restated his several objections to the questions, whereupon there took place that which appears in the margin.[1]

---

1. "MR. MARKS: (appellant's counsel) * * * However, I will withdraw those objections if the Court will instruct the United States Attorney that he cannot ask what felony he was convicted of.
"THE COURT: All right. I think that's fair enough that he was convicted of a felony without asking him what the charge was.
"MR. WALLIN: (for the government) I would argue, your Honor, that under

case law in this Circuit, we are properly allowed to ask, 'have you ever been convicted of a felony?' 'When?' and 'What was it?'
"THE COURT: Well, the cases may support that, but isn't it discretionary in the Court? * * * (There here followed a colloquy between the Court and the Assistant U. S. Attorney.)
"THE COURT: In view of all the circumstances here, I will allow you to offer

Thereafter, the only questions asked of Andrews by the Government attorney were: "Were you ever convicted of a felony?" and "When?" Thus, the failure of counsel to object [R.T. 950] could only have been because of his implied stipulation with court and counsel and was based wholly upon trial strategy, and the advantage thereby gained for his client.

The conviction of each appellant is affirmed.

the felony as to when it was committed but not the nature of it.

"MR. WALLIN: Very well, your Honor.

"THE COURT: All right."