**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**John H. TATAR, Defendant-Appellant.**

**No. 26080.**

United States Court of Appeals,
Ninth Circuit.

March 24, 1971.

Rehearing Denied April 12, 1971.

John Alan Montag (argued), Los Angeles, Cal., for defendant-appellant.

Richard Jaeger, Asst. U. S. Atty., (argued), Robert L. Meyer, U. S. Atty., Henry Novak Jr., Asst. U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before BARNES, KOELSCH and HUFSTEDLER, Circuit Judges.

**PER CURIAM:**

John J. Tatar appeals from his conviction for violating 18 U.S.C. § 201(b) by corruptly promising to give a parcel of land to a public official (an officer of the Internal Revenue Service) with the intent of inducing him to violate his duty. Our jurisdiction is based on 28 U.S.C. § 1291.

The appellant admitted, through his counsel [R.T., p. 49] that he offered the bribe as charged, but based his defense on the doctrine of entrapment. In his appeal, Tatar contends that (1) the evidence established entrapment as a matter of law, and (2) that the instructions of the trial court on the issue of entrapment were erroneous and constitute grounds for reversal. Because the factual background of the case is quite long and detailed and we perceive little merit in the appellant's contentions, we will abbreviate somewhat the chain of events leading to the offer and alleged entrapment.

In March of 1968, Agent Miller of the Internal Revenue Service began an audit of appellant's tax returns for the period 1963 to 1966 which were filed in August of 1967. Tatar was a dealer in real estate. Agent Miller soon uncovered several questionable land and loan transactions. It seems fair to characterize the initial meetings between appellant and Agent Miller by stating that Tatar's records were disorganized, many were missing, his memory was sketchy, and his account of his transactions changed constantly under Miller's probing. On several occasions, Miller discovered assets and transactions which the appellant claimed to have forgotten. It soon became evident that Tatar's taxable income was in all likelihood significantly greater than he had reported for the relevant period.

On the morning of June 11, 1968, Miller again returned to appellant's house. According to Miller's testimony, the first thing Tatar said to him was, "How would you like some land in Las Vegas?" Miller shrugged and defendant went on to say, "Well, before you go today I want to talk to you about it."

Later that same morning, Miller and appellant had further discussions regarding the land. Miller testified about their conversation as follows:

"A. He [Tatar] said I sold—He is speaking of his property close to Las Vegas—I sold one lot for $3,000.00 and another one for $7,100.00. I just put up another lot for, as security for a $30,-000.00 loan.

"Q. All right. Did he tell you how much he paid for that lot?

"A. Yes. He told me he paid $250.00 an acre—well, $250.00 a lot and he had sixteen lots.

"Q. Was there any further conversation?

"A. Yes. He said, I am going up to Las Vegas tomorrow, how would you like for me to get one for you. And he said, it is only $250.00. I said, well, $250.00 is a lot of money. He said, well, don't worry about it, just give me your name and address and I will take care of the rest." [R. T. 81].

Defendant wanted an immediate response from Miller regarding his offer but agreed to wait until Monday. Agent Miller thereupon reported to his supervisor what had transpired.

Agent Miller returned to defendant's home on June 17th, 1968, this time equipped with a hidden microphone, transmitter and tape recorder. A recording was made of their conversation which lasted approximately two hours. Miller met with defendant on June 25 and 26, both of which meetings were also recorded and transcribed. Under cross-examination, Miller stated that he had related the conversation with defendant to his superior because the offer of land was unusual and surprised him and because it came from a man who didn't file tax returns for four years and had told him conflicting stories on every occasion they met. Miller stated that he had the matter of the bribe in mind while he was conducting the audit, but he didn't go to defendant's "house on the 17th expecting to be bribed". [R.T. 107]

The transcript of the recording reveals a fairly consistent pattern. Miller would bring up a transaction and Tatar would claim either that it did not constitute taxable income or that he could not remember the details. Often, he said he would look up business records and other papers but in some instances he claimed that he had none to substantiate his version of various transactions. After going over several transactions, Miller indicated that Tatar would probably be liable for substantial back taxes and penalties. Tatar responded several times that if he owed the money he would pay it. Miller replied that he was not sure what he had and once complained that every time he talked to appellant, he found something new.

Several times during the discussion, Tatar made statements which can be characterized as ambiguous. They can either be interpreted as assertions by Tatar of his intent to pay what he owed or as preliminary probings as to Agent Miller's response to a bribe offer.[1] There then ensued the part of the conversation on June 17th in which the oral offer of the bribe was made and discussed.[2]

*Entrapment as a Matter of Law.*

After a thorough review of the recorded transcript and the testimony, we do not find entrapment as a matter of law under either of the two theories of the doctrine. This Circuit has followed the "predisposition theory" endorsed by Chief Justice Warren in Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, at 820, 2 L.Ed.2d 848 (1958):

> "However, it is appellant's position here that there was proscribed entrapment as a matter of law; which is to say that the jury could not with reason find otherwise than that appellant was not a person predisposed to commit the crimes of which he stands convicted, but was an otherwise innocent person seduced by Government agents so to do."

Robison v. United States, 379 F.2d 338, 343 (9th Cir. 1967) vacated and remanded on other grounds 390 U.S. 198, 88 S.Ct. 903, 19 L.Ed.2d 1040.

In the case at bar there was substantial evidence upon which the jury could base its finding that beyond a reasonable doubt Tatar was predisposed to offer a bribe to Agent Miller. First, the jury could rationally infer that the June 11th offer of the land in Las Vegas was *the initial approach in a bribe attempt.* Once Tatar showed an intent to deflect Agent Miller from his duty, the government can properly afford him an opportunity to complete the bribe. Even if the appellant's explanation that the offer was a *bona fide* attempt of a real estate dealer to sell his property were a reasonable explanation, the jury would be justified in rejecting it. Buttressing the jury's inference of predisposition are the appellant's ambiguous statements related earlier. In light of the June 11th offer, the jury could rationally view these statements as further efforts by Tatar to ascertain if Miller were amenable to a bribe.

---

1. Court Exhibit 1, p. 23, lines 8–15; Ct. Ex. 1, p. 42, lines 10–27, p. 43, lines 1– 15; Ct.Ex. 1, p. 44, lines 9–22.

2. Ct.Ex. 1, p. 45, lines 11–18; p. 50, lines 10–21; p. 51, lines 25–27; p. 52, lines 1– 8.

Even if the "government conduct" theory of entrapment which has been endorsed by a strong minority were applied, the appellant's contention would still fail. This view of the doctrine was advanced by Justice Frankfurter in Sherman, supra (concurring opinion) by Justice Traynor in People v. Moran, 1 Cal. 3d 755, 83 Cal.Rptr. 411, 463 P.2d 763 (1970) (dissenting opinion), and by a district court in this Circuit recently in United States v. Chisum, 312 F.Supp. 1307 (C.D.Calif.1970). In *Moran, supra,* 1 Cal.3d at 765, 83 Cal.Rptr. at 417, 463 P. 2d at 769 the dissent stated the test as follows: "The line must be drawn between methods likely to persuade those unwilling to commit an offense from methods likely to persuade only those who are ready to do so."

 Lopez v. United States, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963), is a case factually similar in many respects to the one before us. An Internal Revenue agent was given electronic recording devices after he reported a bribe attempt to his superiors. The agent thereby recorded additional bribe offers. The Supreme Court found this practice to be justified under the circumstances. In Lopez, however, the agent made no leading remarks in order to elicit the bribe. Our review of the statements of Agent Miller to Tatar reveal the use of no methods of persuasion or inducement which would lead an innocent person to commit this crime. Although Miller made several remarks from which one could infer that he was leading Tatar on, we do not find that these remarks constitute untoward or excessive inducements in view of Tatar's previous statements indicating a desire to offer a bribe.

*Entrapment Instruction.*

Appellant next contends that in its instructions, the trial court distinguished several times between "lawful" and "unlawful entrapment" and thereby confused the jury. Because the appellant's counsel at trial did not object to the instructions, we may reverse only if the trial court committed "plain error" in making this distinction. Rule 52(b) F.R.Crim.P.

In recent years, the Second (United States v. Pugliese, 346 F.2d 861 (1965) and Tenth (Garcia v. United States, 373 F.2d 806 (1967) and Martinez v. United States, 373 F.2d 810 (1967)) Circuits have criticized the use of this distinction but neither has found that its use constituted plain error. In fact, such a view was expressly rejected in *Martinez, supra,* at 812–813.

In our own Circuit, the use of these terms was approved in *Robison, supra,* 379 F.2d at 346.

 Our review of the instructions given by the trial court shows them to have stated the law properly, and to have correctly placed the burden of proof upon the government.

The judgment is affirmed.