**UNITED STATES of America, Appellee,**

v.

**Richard RUSSELL, Appellant.**

**No. 26485.**

United States Court of Appeals,
Ninth Circuit.

April 6, 1972.

New York et al. 5 Cir., 1970, 431 F.2d 409, Part I.

Robert E. Prince, of Stern, Gayton, Neubauer & Brucker, Seattle, Wash., for appellant.

Stan Pitkin, U. S. Atty., Charles Pinnell, Asst. U. S. Atty., Seattle, Wash., for appellee.

Before KOELSCH, ELY and TRASK, Circuit Judges.

ELY, Circuit Judge.

Russell was convicted on three counts of violating the Federal Food and Drug Laws in manufacturing, processing, delivering, and selling a prohibited depressant or stimulant drug, methamphetamine. 21 U.S.C. §§ 331(q) (1), (2); 360a(b). In this appeal, Russell urges that the participation of a Government Agent in the crimes was so overreaching as to constitute entrapment as a matter of law.

In December, 1969, a Special Agent of the Bureau of Narcotics and Dangerous Drugs met with Russell and several of the latter's codefendants. The Agent claimed that he represented an organization anxious to control the manufacture and distribution of methamphetamine in the Pacific Northwest, and he offered to supply the chemical Phenyl-2-Propanone in exchange for one-half of the methamphetamine to be manufactured therewith. An agreement was reached, and several days later, the Agent provided the Phenyl-2-Propanone, and the methamphetamine was produced with the Agent's assistance. He received his share and also purchased an additional amount of the finished product from Russell.

The challenged conduct on the part of the Government's Agent was the supplying of the Phenyl-2-Propanone, a chemical essential to the manufacture of methamphetamine. The Agent himself testified that this chemical was difficult to obtain because one must have a manufacturer's license to purchase it at a chemical supply house and because many suppliers were, at the request of the Bureau of Narcotics, no longer selling it at all. Thus, there could not have been the manufacture, delivery, or sale of the illicit drug had it not been for the Government's supply of one of the essential ingredients.

While Russell candidly concedes that he may have harbored a predisposition to commit the charged offenses, he contends that he may still avail himself of the entrapment defense. Principally, he relies upon the concurring opinions of Justices Frankfurter and Roberts in Sherman v. United States, 356 U.S. 369, 378–385, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958), and Sorrells v. United States, 287 U.S. 435, 453–459, 53 S.Ct. 210, 77

L.Ed. 413 (1932). These opinions propose a test for entrapment that focuses, not on the intent of the accused, but on the conduct of the Government:

> "The crucial question, not easy of answer, to which the court must direct itself is whether the police conduct revealed in the particular case falls below standards, to which common feelings respond, for the proper use of governmental power."

Sherman v. United States, 356 U.S. 369, 382, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958) (Frankfurter, J., concurring).

The basic contention of the Government, in response to Russell's claim, is premised on the following statement of our court, drawn from the majority opinions in *Sherman* and *Sorrells*:

> "Entrapment is shown where Government agents go beyond the mere affording of opportunities or facilities for the commission of the offense and exert persuasion of one kind or another which induces the commission of a crime by one who has no predisposition to do so."

United States v. Walton, 411 F.2d 283, 288 (9th Cir. 1969). The Government argues that the plain import of this language is that one altogether forfeits an entrapment defense if he is "predisposed" to commit the crime.

■ We need not resolve the precise issue apparently presented by the parties. For regardless of the significance of "predisposition" as an element in "entrapment," we conclude that there is merit in Russell's contention that a defense to a criminal charge may be founded upon an intolerable degree of governmental participation in the criminal enterprise. Two theories for this defense have been advanced. Placing

the defense within the ambit of the entrapment doctrine was the approach taken by our learned Brothers of the Fifth Circuit in United States v. Bueno, 447 F.2d 903 (5th Cir. 1971), and by District Judge Ferguson in his very carefully written opinion in United States v. Chisum, 312 F.Supp. 1307 (C.D.Cal. 1970).

The facts of *Bueno* and *Chisum* are remarkably similar to those presented here. In *Bueno*, the defendant was supplied heroin by a government informer, but was nonetheless convicted for selling the same heroin to the Government Agent for whom the informer apparently was working, the sales having been arranged by the informer. In *Chisum*, the defendant was supplied counterfeit money by a Government Agent and then indicted for receiving the counterfeit bills with intent to pass them as genuine. In each case the court held that since the Government had supplied the defendant with the contraband, the defendant was entrapped as a matter of law, regardless of the accused's predisposition to commit the crime.[1]

The facts of the present case cannot fairly be distinguished from those of *Bueno* and *Chisum*. While it is true that Russell and his codefendants were supplied with only one ingredient of the illicit drug, that ingredient was as essential to the perpetration of Russell's alleged crimes as was the heroin in *Bueno* and the counterfeit money in *Chisum*. Russell would have been powerless to "commit" the charged offenses without the Government's pervasive intervention.

The Government, in effect, contends that we are not free to adopt the *Bueno-Chisum* reasoning. Assuming, *arguendo*, that the Government is correct[2] in

---

1. Both courts cited with approval the similar decision of the Illinois Supreme Court in People v. Strong, 21 Ill.2d 320, 172 N. E.2d 765 (1961).

2. Recent cases indicate that the contrary is true. Another panel of our court, after noting the existence of divergent views

concerning the basis of the entrapment doctrine, has written that "the fact remains that it is the unbecoming conduct of the Government which calls the defense of entrapment into play." United States v. Arceneaux, 437 F.2d 924, 925 (9th Cir. 1971). *Cf.* United States v. Bueno, 447 F.2d 903, 906 (5th Cir. 1971); United

its assessment of *Walton, supra,* as limiting the applicability of the "entrapment" defense to instances in which the defendant had no predisposition to commit the crime, an approach other than that relating to the strict "entrapment" defense requires reversal. Judge Hamley, the author of the *Walton* opinion, recently articulated the rationale underlying this alternative approach:

> ". . . although this is not an entrapment case, when the Government permits itself to become enmeshed in criminal activity, from beginning to end, to the extent which appears here, the same underlying objections which render entrapment repugnant to American criminal justice are operative. Under these circumstances, the Government's conduct rises to a level of *"creative* activity" (*Sherman, supra,* 356 U.S. at 372, 78 S.Ct. at 821), substantially more intense and aggressive than the level of such activity charged against the Government in numerous entrapment cases we have examined."

Greene v. United States, 454 F.2d 783 (9th Cir. 1971).[3]

■ The holding of *Greene,* however, was limited to the unique circumstances there involved. The Government Agent in that case alternately prodded, threatened, encouraged, and aided the defendants in manufacturing and supplying him with bootleg whiskey. The conduct of the Agent in Russell's case was, hopefully, also unique; certainly it was equally repugnant, if not more so, than the conduct of the Agent in *Greene.*

Thus, under the *Greene* rationale also, reversal is required.

Apparently, the only difference between *Bueno* and *Chisum,* as distinguished from *Greene,* is the label affixed to the result. Both theories are premised on fundamental concepts of due process[4] and evince the reluctance of the judiciary to contenance "overzealous law enforcement."[5] We do not choose to affix a label to our result; hence, we need not select between the alternative theories. Here, both compel the same disposition.

Upon remand, the indictment will be dismissed.

Reversed, with directions.

TRASK, Circuit Judge (dissenting):

The majority reverses this judgment of conviction upon the ground that the "participation of a Government Agent in the crimes was so overreaching as to constitute entrapment as a matter of law." I respectfully disagree.

The case was tried to a jury and the court sustained the verdict and rendered judgment thereon. There is no question but that Russell did the things he was charged with doing. In his brief to this court he states:

> "The jury was instructed as to the law on entrapment as set forth in Notaro v. U. S., 363 F.2d 169 (1966, 9th Cir.) and Walton v. U. S. [United States v. Walton], 411 F.2d 283 (1969, 9th Cir.), and concededly here we do not have an issue of propensity, because the defendant through hearsay

States v. Chisum, 312 F.Supp. 1307, 1310 (C.D. Cal.1970).

We also note that Judge Hamley, the author of the *Walton* opinion, upon which the Government relies in urging that lack of predisposition is an essential element of a successful entrapment defense, recently indicated that such is true only in "the usual entrapment defense." Greene v. United States, 454 F.2d 783, 786 (9th Cir. 1971).

3. *See also* Notaro v. United States, 363 F. 2d 169, wherein, at 173, we wrote: "It . . . [is] . . . not thought to be

right or just that a Government should instigate and successfully pursue prosecution for the commission of an act which the prosecuted would not likely have committed but for the importunity of an agent of the Government itself."

4. *See* Raley v. Ohio, 360 U.S. 423, 79 S. Ct. 1257, 3 L.Ed.2d 1344 (1959), discussed in United States v. Chisum, 312 F.Supp. 1307, 1310 (C.D. Cal.1970).

5. Sherman v. United States, 356 U.S. 369, 381, 78 S.Ct. 819, 825, 2 L.Ed.2d 848, 856 (1958) (Frankfurter, J., concurring).

statements stated that he did sell speed and associated with Connolly who manufactured speed. The jury could find from the testimony that the government had not unlawfully entrapped Russell and that Russell did commit the acts as charged. There is no question that Russell committed the acts." Appellant's Brief at 7.

There was no error claimed in any instruction given or refused. The "overreaching participation" relied upon by the majority is the conduct of the government agent in supplying Phenyl-2-Propanone to the defendant and his fellow manufacturers. This chemical is essential to the manufacture of methamphetamine. The opinion states that it could not have been obtained had the government agent not supplied it. I would disagree with the rationale of the majority assuming its recital of facts is correct. I particularly dissent when the facts as I read them completely fail to support the factual recitals upon which the opinion is based. The thesis is that the three individuals involved would not have been able to manufacture the product and sell it without the chemical from the government. The crimes charged occurred in early December, 1969. At one of the meetings which occurred on December 7 between the undercover agent and one of the three, the agent testified to a conversation at Russell's house:

> "He [Connolly] stated to me he had been manufacturing methamphetamine since May of 1969, that since May, up to that time, he had manufactured approximately three pounds of methamphetamine. . . ."
>
> \* \* \* \* \* \*
>
> "At that time John Connolly handed me a small plastic bag containing a white powder. John Connolly stated to me 'This is the last batch that we made.' " [1]

The government did not supply any of the ingredients for this drug.

The government agent whose conduct is in question because he offered to supply Phenyl-2-Propanone in return for part of the methamphetamine, also testified:

> "THE COURT: I have a question. It was yesterday when you were testifying, Mr. Shapiro, and I am not quite sure in my own mind what you said, but did I understand you to testify that you offered to bring more Propanone, and that one of the defendants said they didn't want it, because they had their own, or something to that effect:
>
> "THE WITNESS: That conversation took place on January 7, 1970.
>
> "THE COURT: That they had their own?
>
> "THE WITNESS: Yes, sir, Mr. Connolly stated that to me.
>
> "THE COURT: Are there any other bottles of Propanone among these exhibits, except the one with the corners folded down.
>
> "THE WITNESS: There was that one, and there was an empty bottle with a Phenyl-2-Propanone label on it, and there was a second bottle approximately half full.
>
> "THE COURT: Of Phenyl-2-Propanone in these exhibits?
>
> "THE WITNESS: Yes, sir." [2]

It is clear from this testimony that while Phenyl-2-Propanone may have been difficult to obtain, it had been obtained in the past without the assistance of the government agent. We are required in this situation to view the evidence, and all reasonable inferences therefrom, in the light most favorable to the government. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L. Ed. 680 (1942); United States v. Halprin, 450 F.2d 322 (9th Cir. 1971). Ac-

---

1. R.T. at 7–8. Patrick Connolly admitted that he had told the agent they had made three pounds since May but denied that his story was true. R.T. at 149. He also admitted that John Connolly handed the agent a sample. R.T. at 149.

2. F.T. at 95–6.

cepting that as true, it is correct that the appellant did use the necessary chemical supplied by the government agent on the date of manufacture for which he was convicted. It is not correct that it was impossible or even difficult for the defendant and his co-conspirators to obtain it from their own sources of supply. Under these circumstances it can hardly be argued that there was an "intolerable degree of government participation in the criminal enterprise."

Apart from my disagreement based upon the facts, I disapprove of what appears to me to be an unnecessary effort to enlarge the doctrine of entrapment beyond the limitations of the opinion of the Court in Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848, and place this court among the minority who espouse the "governmental conduct" approach. *See* United States v. Tatar, 439 F.2d 1300, 1303 (9th Cir. 1971).