**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Frederick Isiah GRANGER, Defendant-Appellant.**

**No. 72–2201.**

United States Court of Appeals, Ninth Circuit.

Feb. 5, 1973.

Certiorari Denied June 4, 1973. See 93 S.Ct. 2757.

M. Van Elgort, Deputy Federal Public Defender, argued, Alan Issacman, Deputy Federal Public Defender, John K. Van De Kamp, Federal Public Defender, Los Angeles, Cal., for defendant-appellant.

Darrell W. MacIntyre, Asst. U. S. Atty. (argued), Eric A. Nobles, Vincent J. Marella, Asst. U. S. Attys., William D. Keller, U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before HAMLEY, BROWNING and WRIGHT, Circuit Judges.

HAMLEY, Circuit Judge:

Frederick Isiah Granger appeals from his conviction, after a jury trial, on counts three and four of a four-count indictment pertaining to the transfer, delivery and possession of counterfeit money in violation of 18 U.S.C. §§ 472 and 473. All of Granger's arguments on appeal relate to his sole defense of entrapment. We affirm.

Granger first contends that the trial court erred in refusing to give his requested jury instruction No. 1 on entrapment. We quote the essence of the proposed instruction in the margin.[1] This requested instruction is based on what has been termed the "Government Conduct Theory" of entrapment which has its origins in the separate opinion of Mr. Justice Roberts for himself and two other justices in Sorrells v. United States, 287 U.S. 435, 453, 53 S.Ct. 210, 77 L.Ed. 413 (1932), and the concurring opinion of Mr. Justice Frankfurter, for himself and three other Justices, in Sherman v. United States, 356 U.S. 369, 378, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958).

Instead, the trial court gave an entrapment instruction designed to apply the so-called "Predisposition Theory," adopted by the Supreme Court in the opinions by Mr. Chief Justice Hughes in Sorrells, and by Mr. Chief Justice Warren in Sherman. With exceptions to be noted below, the Ninth Circuit has consistently applied the "Predisposition Theory."[2]

Granger, however, calls attention to two recent decisions of this court which, in his view, demonstrate that, as currently conceived, the principal issue raised by the entrapment defense is the moral character of the police activity. These decisions are Greene v. United States, 454 F.2d 783 (9th Cir 1971), and United States v. Russell, 459 F.2d 671 (9th Cir. 1972), cert. granted 409 U.S. 911, 93 S. Ct. 226, 34 L.Ed.2d 172 (1972).

It is fair to state that these two decisions carve out a narrow exception to the theretofore prevailing rule in this circuit that an entrapment defense is not available to one who is shown to have a predisposition to commit the kind of offense in question. In Greene, the defendant was shown to have a predisposition to commit offenses associated with bootlegging. Under the unique circum-

1. "The defendant asserts that he was a victim of entrapment as to the crime charged in the indictment.

"When a person is induced to commit a crime by the persuasion or pressure of Government agents or informants, he is a victim of entrapment, and the law as a matter of policy forbids his conviction in such a case.

"If you find that the criminal design or intent to commit the offense charged originated with the Government, through their agents or informants and that the de-
fendant's course of conduct was a product of the informants and agents inducements then it is your duty to acquit the defendant."

2. For example, see United States v. Tatar, 439 F.2d 1300, 1302–1303 (9th Cir. 1971); United States v. Walton, 411 F.2d 283, 288 (9th Cir. 1969); Nordeste v. United States, 393 F.2d 335, 338 (9th Cir. 1968); Robison v. United States, 379 F. 2d 338, 343 (9th Cir. 1967). Cf. Hughes v. United States, 427 F.2d 66, 69 (9th Cir. 1970).

stances of that case, however, it was established that the Government, through its agent, directly and continuously involved itself in the creation and maintenance of the criminal operations.[3] Because predisposition to commit such offenses was shown, we acknowledge that *Greene* is not a typical entrapment case. But we nevertheless set aside the conviction on the ground that

> "when the Government permits itself to become enmeshed in criminal activity, from beginning to end, to the extent which appears here, the same underlying objections which render entrapment repugnant to American criminal justice are operative." 454 F.2d at 787.

In *Russell*, the defendant was convicted on three counts of violating the Federal Food and Drug laws in manufacturing, processing, delivering, and selling a prohibited depressant or stimulant drug, namely methamphetamine, in violation of 21 U.S.C. §§ 331(q)(1), (2); 360a(b). The evidence showed that a Special Agent of the Bureau of Narcotics and Dangerous Drugs met with Russell and several of the latter's codefendants. The agent claimed that he represented an organization anxious to control the manufacture and distribution of methamphetamine in the Pacific Northwest. He offered to supply the chemical Phenyl-2-Propanone in exchange for one-half of the methamphetamine to be manufactured therewith. An agreement was reached, and several days later, the agent provided the Phenyl-2-Propanone, and the methamphetamine was produced with the agent's assistance. He received his share and also purchased, from Russell, an additional amount of the finished product.

We noted in *Russell* the defendant's concession that he may have harbored a predisposition to commit the charged offenses. We nevertheless reversed, holding that a defense to such a charge may be founded upon an intolerable degree of governmental participation in the criminal enterprise. We declined to label the defense, in this context, an entrapment defense, but held the conduct of the government agent equally repugnant, if not more so, than the conduct of the government agent in *Greene*.

Nothing approaching the unique circumstances of *Greene* or *Russell* is present here, even accepting at full value all of the evidence favorable to Granger. The offenses of which he was convicted occurred on August 27, 1971. Granger had previously, by his own admission, engaged in similar transactions on May 29, 1971. The May 29 offense was preceded by considerable contact between Granger and Carl Birge, an acquaintance Granger met while serving a sentence in state prison. Birge, a government informer, introduced Granger to a government agent who acted as a prospective buyer of counterfeit money.

While Birge and the government agent had, prior to May 29, made persistent attempts to get Granger to find a source of counterfeit currency, they made no effort to assist in the manufacture, transportation or concealment of counterfeit currency. They did not even offer to compensate Granger for his assistance although he hoped to receive some clothes or jewelry.[4]

After completion of the May 29 transaction, activities got under way leading to the August 27 transaction on which Granger's conviction is based. Again, the activities of Birge and the govern-

---

3. The government agent participated in the guise of a partner in the illegal undertaking. He offered to provide a still, still site, still equipment, and an operator. He provided, at wholesale prices, a ton of sugar for use in the bootleg operation.

4. A codefendant, Joe Dell Whitaker, was charged in counts one and two of the in-

dictment with offenses growing out of the May 29, 1971, incident. Granger was charged as an aider and abettor in count one, but was not charged in count two. Whitaker was found guilty on counts one and two. Granger was acquitted of the aiding and abetting charge under count one.

ment agent were limited to attempts to persuade Granger to find a source of counterfeit money. But the contacts were now somewhat less persistent. Granger was told that he would profit from his assistance. Finally, Granger did locate a source and, in order to obtain sample counterfeit bills, he met with the government agent and received one hundred dollars in genuine United States currency to be used to purchase samples. On August 27, 1971, Granger gave the agent a counterfeit one hundred dollar bill and two counterfeit twenty dollar bills. When Granger's source decided to drop out of the picture, Granger was arrested.

The government agent's efforts to have Granger find a source of counterfeit currency was perhaps more persistent and continuous than in many cases which come to mind. But, in essence, they were activities of the same kind which have been held permissible in dealing with other persons predisposed to commit the relevant offenses. Thus this appears to us to be, essentially, a typical instance for application of the rule that the entrapment defense is not available to one predisposed to commit the crime.

In *Greene* and *Russell* we have evidenced our willingness to set aside convictions for offenses in which government agents were, in a very real sense, actual participants in the crime, notwithstanding predisposition by the defendant. Those cases involved government participation to the extent that agents actually exercised control over the criminal activity and aided in the manufacture, production, or transfer of the contraband. *See also*, United States v. McGrath, 468 F.2d 1027 (7th Cir. 1972). This is not such a case.

Granger's remaining points are without merit. On the whole we believe the trial court's initial and supplemental instructions on the law of entrapment were clear and fair. One could find fault with some nuances which can be drawn

from these instructions, but we conclude that any such defects were minor and did not prejudice Granger.

The evidence bearing upon entrapment was clearly sufficient to overcome the contention that Granger was entrapped as a matter of law. Needless to say, what we have recounted above concerning the facts relevant to entrapment reflects only Granger's version, since his entitlement to a particular entrapment instruction must be measured by his version of the evidence. But when it comes to the sufficiency of the evidence to support the verdict, we consider the evidence favorable to that verdict.

Here, the Government's evidence pertaining to entrapment varied widely from that offered by Granger. According to the Government's case, Granger was about as active in contacting the government agents as they were in contacting him. This left just a credibility question for the jury. Robison v. United States, 379 F.2d 338, 343 (9th Cir. 1967).

Affirmed.