**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**HSIEH HUI MEI CHEN and Tsang-Chi Chen, Defendants-Appellants.**

**Nos. 83–1143, 83–1159.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 9, 1984.

Decided Feb. 25, 1985.

Tang, Circuit Judge, filed a concurring opinion.

Canby, Circuit Judge, filed a concurring opinion.

Jon R. Cooper, Asst. U.S. Atty., Tucson, Ariz., for plaintiff-appellee.

John H. Messing, Tucson, Ariz., for defendant-appellant Hsieh Hui Mei Chen.

John G. Bogart, Gerson & Bogart, Tucson, Ariz., for defendant-appellant Tsang-Chi Chen.

Before TANG, CANBY, and BEEZER, Circuit Judges.

BEEZER, Circuit Judge:

Hsieh Hui Mei Chen ("Amey") and Tsang-Chi Chen ("James") appeal their convictions on several counts of bribery and aiding and abetting another to commit bribery. We affirm in part, reverse in part, and remand.

FACTS

The Chens owned a Chinese restaurant in Tucson, Arizona. They had both been in the United States for approximately five years on non-immigrant visas from Taiwan. United States Border Patrolman Theodore Nordmark went to the Chens' restaurant in July 1982, where he attempted to arrest illegal aliens. On August 5, 1982, Amey Chen called Nordmark and told him that if he stayed away from her restaurant she would make it "good" for him. Nordmark told this to his supervisor, and it was decided that Nordmark would tape record his meetings with Amey Chen.

Between August 20 and October 6, Agent Nordmark met with Amey ten times, primarily to discuss illegally obtaining immigration documents. Amey's husband, James Chen, was present at five of these meetings. Several payments ranging between $100.00 to $500.00 were made at the meetings. Moreover, Amey Chen made two $1,000.00 payments to William Johnston, the director of the Immigration and Naturalization Service ("INS"), to obtain a green card for her cook.

On December 7, 1982, Amey was indicted on twelve counts of bribery or aiding and abetting bribery of INS officials, Ted Nordmark and William Johnston, in violation of 18 U.S.C. §§ 201(b)(2) and (3). James Chen was charged in the same indictment with four counts of bribery or aiding and abetting bribery.

ANALYSIS

I. *Entrapment*

The Chens contend that they were either entrapped as a matter of law or that the evidence was insufficient to support a finding of predisposition to commit the crime. They therefore argue that their motions for judgment of acquittal were improperly denied and that the trial judge erred in denying James' motion for a new trial.

a. *Standard of Review*

■ On appeal, this court must determine, after reviewing the evidence in the light most favorable to the government, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Federico,* 658 F.2d 1337, 1343 (9th Cir.1981). Moreover, in reviewing the denial of a motion for a new trial, this court applies an abuse of discretion standard and will only grant such a motion in exceptional circumstances in which the evidence weighs heavily against the verdict. *United States v. Pimentel,* 654 F.2d 538, 545 (9th Cir. 1981).

b. *Entrapment as a Matter of Law*

■ In order to show that entrapment exists as a matter of law, there must be undisputed testimony making it patently clear that an otherwise innocent person was induced to commit the act complained of by trickery, persuasion, or fraud of a government agent. *United States v. Rangel,* 534 F.2d 147, 149 (9th Cir.), *cert. denied,* 429 U.S. 854, 97 S.Ct. 147, 50 L.Ed.2d 129 (1976); *see United States v. Abushi,* 682 F.2d 1289, 1297 (9th Cir.1982). The controlling question on review is whether the defendant lacks the predisposition to commit the act. *Id.* at 1297.

■ With regard to Amey Chen, there was clearly no entrapment as a matter of law. She contacted Nordmark and told him that if he stayed away from her restaurant she would do something good for him.

This initial statement to Nordmark shows a predisposition to commit bribery. *See United States v. Tatar*, 439 F.2d 1300, 1302 (9th Cir.1971). Although Amey did not engage in the activity for profit and had a good reputation for honesty, the fact that the initial suggestion of bribery came from her shows she was predisposed to commit the crime.

■ As to James, there was no evidence showing that he was not predisposed to commit the crime. There was no evidence that James was reluctant to pay Nordmark or that Nordmark had to use undue inducements. Although James did not initiate contact, he acquiesced in the meetings set up with Nordmark. There was, therefore, no entrapment as a matter of law and it was proper to submit the issue to the jury.

### c. Sufficiency of the Evidence

■ There was also sufficient evidence to support the jury's finding that the defendants · were predisposed to commit the crimes charged. As to Amey, there was repeated evidence that she gave Nordmark money or was present when others did. Moreover, Amey's own statements show that she knew her conduct was illegal.

In James's case, he was repeatedly informed by Nordmark that the law would have to be broken to obtain the green cards. Furthermore, Nordmark used no undue inducements and James was at several of the meetings when money was received by Nordmark. Moreover, James assured Nordmark that they, the Chens, did not keep records of their payments to him, because Chinese people know not to do that.

### II. Elements of the Crime

#### a. Corrupt Intent

■ The crime of bribery requires that an individual corruptly give money to an official to influence him or her in the performance of his or her duties. 18 U.S.C. § 201(b). Thus, bribery requires "corrupt intent," which is a higher degree of intent than is required under the provision outlawing gratuities to public officials. *United States v. Strand*, 574 F.2d 993, 995 (9th Cir.1978). Both James Chen and Amey Chen contend that the evidence was insufficient to show corrupt intent.

■ We find that there was sufficient evidence to support the jury's finding that the Chens had the requisite corrupt intent. Amey initially indicated that she would do something for Nordmark if he would do something for her. Her own statements show that she was aware of the illegality of the transaction. Similarly, Nordmark repeatedly told James that the law would have to be broken to obtain the green cards. Because James was present when money was given to Nordmark on several occasions, a jury could reasonably find that he knew that Nordmark was being paid to obtain the cards in violation of the law.

#### b. Gratuity in Count 10

■ Count 10 is based on the payment of $100 by Pao Shih to Nordmark in the presence of Amey Chen. Amey contends that the $100 was a mere gratuity because Pao Shih had already paid Nordmark the full price of $500. Although Nordmark testified that the payment was a tip, he gave Pao Shih her temporary immigration card at that meeting. Thus, a reasonable jury could find that the payment was for the service Nordmark provided.

### III. Severance

The trial court denied James Chen's motion for a severance of his trial from that of Amey Chen. James contends that this was an abuse of discretion.

■ First, James contends that the district court's decision prevented him from testifying in his own behalf due to Amey's privilege against adverse spousal testimony. *See United States v. Lefkowitz*, 618 F.2d 1313, 1317–18 (9th Cir.), *cert. denied*, 449 U.S. 834, 101 S.Ct. 86, 66 L.Ed.2d 27 (1980). This argument was not raised in the district court and is not properly before this court. *See United States v. Saavedra*, 684 F.2d 1293, 1297 (9th Cir.1982). Even if

it had been raised properly, it would be meritless because James was not prevented from testifying. *Trammel v. United States,* 445 U.S. 40, 53, 100 S.Ct. 906, 913, 63 L.Ed.2d 186 (1980) (holding that the privilege can only be asserted by the witness-spouse).

▮▮▮▮ Second, James contends that the denial of the severance was unfairly prejudicial because the jury could not separate the evidence against Amey from the evidence against him. The standard of review for a denial of a motion to sever is abuse of discretion. *United States v. Abushi,* 682 F.2d 1289, 1296 (9th Cir.1982). The burden falls on the defendant to show that the prejudice was so manifest as to constitute an abuse of discretion. *United States v. Armstrong,* 621 F.2d 951, 954 (9th Cir.1980). The ultimate issue is whether the jurors could follow the court's instructions and appraise the evidence against each defendant separately. *United States v. Rasheed,* 663 F.2d 843, 854 (9th Cir.1981), *cert. denied,* 454 U.S. 1157, 102 S.Ct. 1031, 71 L.Ed.2d 315 (1982). Although the jurors were properly instructed to keep the evidence separate, James contends that a note from the jury to the judge shows that the jurors could not separate the evidence. In fact, the note shows that the jury was aware of the need to separate the evidence. In the absence of any evidence that the jury actually confused the evidence, James has failed to meet his burden of proving that the denial of his motion was manifestly prejudicial.

## IV. *Evidentiary Rulings*

### a. *Expert on Chinese Customs*

▮▮▮▮ The district court refused to receive the testimony of an expert on Taiwanese customs, who would have testified that persons of Asian extraction are more susceptible to inducement by government officials, because the defendants had not established an adequate foundation. This court may only overturn that ruling upon finding an abuse of discretion. *United States v. Hanigan,* 681 F.2d 1127, 1131 (9th Cir.1982), *cert. denied,* 459 U.S. 1203,

103 S.Ct. 1189, 75 L.Ed.2d 435 (1983). If the testimony of the expert had been based on a personal examination of the Chens, we would give the matter more serious consideration. *See United States v. Hill,* 655 F.2d 512, 516 (3d Cir.1981), *cert. denied,* —— U.S. ——, 104 S.Ct. 699, 79 L.Ed.2d 165 (1984); *United States v. Benveniste,* 564 F.2d 335, 339 (9th Cir.1977). Because the Chens failed to show any personal application of the expert's testimony, however, the district court did not abuse its discretion by excluding the testimony.

### b. *Expert on Amey Chen's English Proficiency*

[17] The district court refused to receive the testimony of an expert regarding Amey's ability to understand English. Because the jury had listened to tape recorded conversations with Amey, the district court did not abuse its discretion in finding that this evidence was cumulative.

### c. *Evidence Concerning Amey Chen's Gullibility*

▮▮▮▮ The district court refused to receive evidence that allegedly demonstrated Amey's gullibility in regard to the customs and practices of the United States. Because this evidence was quite tangential and possibly even harmful to Amey, the district court did not abuse its discretion by excluding it.

### d. *Right to Cross-Examination*

▮▮▮▮ The Chens contend that the district court unduly restricted their cross-examination of Border Patrolman Nordmark. In fact, the district court merely directed defense counsel to forbear from eliciting on cross-examination a simple repetition of the statements made in the tape recordings. The Chens were free to examine Nordmark regarding the context or meaning of the statements. Thus, the district court did not abuse its discretion. *See Skinner v. Cardwell,* 564 F.2d 1381, 1388–89 (9th Cir. 1977), *cert. denied,* 435 U.S. 1009, 98 S.Ct. 1883, 56 L.Ed.2d 392 (1978).

■ The Chens also contend that the district court unduly restricted their cross-examination of FBI agent Dunnigan regarding his compliance with certain internal agency guidelines on the creation of criminal opportunities. The district court found that the guidelines were not binding on Dunnigan and thus refused to allow the Chens to inquire about them on cross-examination. While the guidelines might have been relevant in other contexts, the district court's ruling was not an abuse of discretion. *See id.* at 1388.

### e. *Use of Transcripts*

■ The district court allowed the jury to use written transcripts produced by the government as an aid in listening to the tape recordings. Although the district court has discretion to allow this procedure, *United States v. Tornabene*, 687 F.2d 312, 317 (9th Cir.1982), Amey contends that inaccuracies in the transcripts precluded their use. In fact, the district court took several steps to ensure the accuracy of the transcripts. First, the court reviewed the tapes and transcripts before trial. Second, the court allowed defense counsel to highlight alleged inaccuracies and to introduce alternative versions of the transcripts. Third, the court repeatedly instructed the jury that the tapes, rather than the transcripts, were evidence to be considered in reaching a verdict. Finally, the jury was allowed to compare the transcripts to the tape recordings and to hear the arguments of counsel on the content and meaning of the conversations. Thus, the district court did not abuse its discretion.

### f. *The* Brady *Issue*

■ Due process requires the prosecutor to give defense counsel upon request any information favorable to the accused that is within the prosecutor's possession and is material to the defendant's guilt or to sentencing. *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963). The test for materiality is whether the requested evidence might have affected the outcome of the trial. *United States v. Agurs*, 427 U.S. 97, 104, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976). Reversal is required when there is a "reasonable possibility" that the error materially affected the verdict. *United States v. Goldberg*, 582 F.2d 483, 488 (9th Cir.1978), *cert. denied*, 440 U.S. 973, 99 S.Ct. 1538, 59 L.Ed.2d 790 (1979).

■ The Chens contend that the district court's refusal to order the prosecution to give them an internal Border Patrol investigative report regarding Nordmark violated their rights under *Brady*. We have examined this document, which was reviewed by the district court *in camera* and sealed for purposes of appeal, and have concluded that it was not material.

■ Amey Chen contends that she was not properly provided with corrections made to various transcripts, that she received one tape only two days before trial, and that she was not provided with information regarding Nordmark's alleged wish to transfer to another job assignment. The record does not support these allegations. Moreover, Amey has failed to show any reasonable possibility that the verdict was materially affected.

■ Finally, Amey Chen contends that the district court erred in failing to require the prosecution to provide *Brady* material beyond that contained in the government's files. While the prosecution must disclose any information within the possession or control of law enforcement personnel, *Imbler v. Craven*, 298 F.Supp. 795 (C.D.Cal.1969), *aff'd sub nom. Imbler v. California*, 424 F.2d 631 (9th Cir.), *cert. denied*, 400 U.S. 865, 91 S.Ct. 100, 27 L.Ed.2d 104 (1970), it has no duty to volunteer information that it does not possess or of which it is unaware, *United States v. Goldberg*, 582 F.2d at 490. Amey has alleged neither a violation of this principle nor the existence of material information.

### V. *Jury Instructions*

■ Amey Chen challenges several jury instructions. In reviewing the ade-

quacy of the district court's instructions, this court must view them in light of the whole trial. *United States v. James*, 576 F.2d 223, 227 (9th Cir.1978). Furthermore, the district court has broad discretion in fashioning the instructions and neither party can insist on particular language. *Id.* at 226.

### a. *Whether the Action Requested Must Be Within the Official's Power*

■ Amey contends that the district court improperly instructed the jury that a person may be convicted of bribery even though the action requested is not within the official's power to perform. The district court properly stated the law to the jury. *See United States v. Gjieli*, 717 F.2d 968, 972 (6th Cir.1983), *cert. denied*, — U.S. ——, 104 S.Ct. 1595, 80 L.Ed.2d 127 (1984).

### b. *Entrapment as a Whole*

■ Amey contends that the district court erred in failing to instruct the jury that it could consider entrapment in general as opposed to its application to each count. Because each bribe was a separate offense and can be punished separately, *United States v. Anderson*, 509 F.2d 312, 332–33 (D.C.Cir.1974), *cert. denied*, 420 U.S. 991, 95 S.Ct. 1427, 43 L.Ed.2d 672 (1975), it was proper for the district court to instruct the jury to consider each count separately. As a whole, the instructions correctly stated the law regarding entrapment.

### c. *Entrapment by Estoppel*

■ Amey contends that the district court erred in failing to instruct the jury regarding entrapment by estoppel. Entrapment by estoppel applies when an official tells the defendant that certain conduct is legal and the defendant believes the official. *See, e.g., Cox v. Louisiana*, 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965). In this case, Nordmark told Amey that the conduct was illegal, and Amey stated that she knew her actions were unlawful.

Thus, the district court's instruction was proper.

### d. *Gratuity vs. Bribe*

■ With regard to Count 10, Amey contends that the district court erred by rejecting her proposed instruction regarding the distinction between the crimes of bribery and gratuity. In evaluating the sufficiency of the evidence, we concluded above that a jury could have reasonably found that the payment by Pao Shih was a bribe, rather than a gratuity. In evaluating the refusal to give a jury instruction, however, the issue is whether the instruction stated a legitimate defense and evidence supporting the defense was before the jury. *United States v. Wright*, 593 F.2d 105, 107 (9th Cir.1979). The defense asserted by Amey was liegitimate, since proof of a gratuity does not establish the requisite corrupt intent for a bribery conviction. Nordmark's testimony supported the defense. Although the evidence of gratuity was not strong enough to compel a judgment of acquittal, it was sufficient to require a jury instruction. As a result, the district court erred by refusing to give the jury instruction.

### CONCLUSION

The judgment of the district court is AFFIRMED on all counts except Count 10 against Amey Chen, on which it is REVERSED and REMANDED.

TANG, Circuit Judge, concurring.

It is with sadness that I join this decision.

I concur because the government has technically proven its case. The jury has found no entrapment; nevertheless, although not technically induced by the government, these offenses were certainly governmentally encouraged.

Mrs. Chen's efforts to curry official favor from a United States border patrolman were indeed improper. Once approached, however, Patrolman Nordmark could have as easily indicated that whatever the customs elsewhere such solicitation is com-

pletely unacceptable in this country. That would have ended the incident. Instead, the government mindlessly donned its blinders and pursued the Chens with a zeal and commitment of resources more befitting an undercover investigation aimed at breaking up an elaborate smuggling operation. At what cost was this done? Were the Chens such a threat to the integrity of our law enforcement establishment? With the agency's enforcement resources already strained to capacity to handle expeditiously the agency's regular immigration duties, it is questionable whether this diversion to investigate, involve and transform into felons otherwise lawful but misguided aliens represented a wise allocation of scarce resources. The consequent involvement of prosecutorial and judicial machinery only served to spread this misallocation of resources to other levels within the justice system.

The government has won a victory, but it rings hollow. Technically the Chens were not entrapped but these violations could have been easily prevented with a simple "No". Does the price of their misguidance demand five years' incarceration and then deportation? Isn't there a sufficiency of criminal offenses without the government contributing to their manufacture? This total exercise leads any critical observer to be skeptical and to ponder whether justice has been served.

CANBY, Circuit Judge, concurring.

I concur fully in Judge Beezer's opinion for the court. For my own part, I am also in substantial agreement with the sentiments expressed by Judge Tang in his concurring opinion.