**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | No. 18-50251 |
| v. | D.C. No. 2:17-cr-00459-RGK-1 |
| MICHAEL KIMBREW, *Defendant-Appellant.* | OPINION |

Appeal from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Argued and Submitted October 15, 2019
Pasadena, California

Filed December 9, 2019

Before: Jacqueline H. Nguyen and Eric D. Miller, Circuit
Judges, and Eric N. Vitaliano,* District Judge.

Opinion by Judge Nguyen

---

*The Honorable Eric N. Vitaliano, United States District Judge for
the Eastern District of New York, sitting by designation.

**SUMMARY**<sup>**</sup>

**Criminal Law**

The panel affirmed a conviction for bribery of a public official, in violation of 18 U.S.C. § 201(b)(2)(A), in a case in which the defendant, while working as a field representative for a congresswoman, took money from an undercover agent—posing as an investor and partner of a medical marijuana dispensary—in exchange for the defendant's promise to make the dispensary's permitting problems go away.

The defendant contended that the government failed to prove that he could make good on his promises, and therefore he did not commit an "official act" within the meaning of the bribery statute.

The panel held that a rational jury could have reasonably concluded that the defendant had the ability to exert the promised influence over the congresswoman and the Compton, California City Attorney. The panel rejected the defendant's contention that because marijuana dispensaries were categorically unlawful in Compton, and it would have been impossible for him to help secure an operating permit, there was no "official act." Explaining that a bribe tied to a contingency is no less a bribe, the panel held that the evidence supports the jury's conclusion that the defendant— who represented to the undercover agent that plans were underway to permit a limited number of marijuana

---

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

dispensaries to operate in the City—could have exerted influence to help obtain the promised permit at a later date. The panel wrote that § 201 liability does not depend on an outcome; the offense is complete at the moment of agreement, and that agreement need not be accompanied by the bribe recipient's genuine intentions to follow through. The panel wrote that the prosecution was not in any event required to prove that the defendant could achieve the outcome he promised.

The panel addressed other arguments in a concurrently filed memorandum disposition.

## COUNSEL

Alyssa D. Bell (argued), Cohen Williams LLP, Los Angeles, California, for Defendant-Appellant.

Lindsey Greer Dotson (argued), Assistant United States Attorney; L. Ashley Aull, Chief, Criminal Appeals Section; Nicola T. Hanna, United States Attorney; United States Attorney's Office, Los Angeles, California; for Plaintiff-Appellee.

**OPINION**

NGUYEN, Circuit Judge:

Michael Kimbrew appeals his convictions and sentence for attempted extortion by an employee of the United States, in violation of 18 U.S.C. § 872, and bribery of a public official, in violation of 18 U.S.C. § 201(b)(2)(A). Kimbrew does not dispute that he took money in exchange for a promise that he made as a federal public official. He instead argues that he promised to do the impossible, so his conduct falls outside the purview of § 201 bribery.[1] We are not persuaded, and we affirm.

## I.

## BACKGROUND

In early 2015, Kimbrew worked as a field representative for then-Congresswoman Janice Hahn ("the Congresswoman"). Kimbrew worked in the Congresswoman's Compton office, which was located inside Compton City Hall. His job responsibilities included "representing [the Congresswoman] . . . at a variety of events," "attending important . . . town hall or city council meetings," and "bring[ing] information back that the [C]ongresswoman . . . could use or should be aware of."

Around March 2015, Kimbrew visited a medical marijuana dispensary in Compton called Green Legendz. He told one of the shop's employees that the business did not have the permits it needed to operate lawfully. He left his

---

[1] We address Kimbrew's remaining arguments in a memorandum disposition filed concurrently with this opinion.

business card and asked the employee for the owners' contact information. The employee testified that "it seemed like [Kimbrew] was expecting some type of agreement," and that he thought Kimbrew wanted money. Kimbrew later returned to the shop and said that, if the owners didn't contact him soon, he would have Green Legendz shut down.

The owners of Green Legendz ultimately met with Kimbrew at his office in Compton City Hall. Kimbrew explained that Green Legendz had a permitting problem, but he could "make all that go away." The owners understood Kimbrew to be asking them for money "to help Green Legend[z] stay in business," but no money was exchanged at the meeting.

Thereafter, an undercover agent ("UC") of the Federal Bureau of Investigation ("FBI") contacted Kimbrew, posing as an investor and partner of Green Legendz. The UC arranged a meeting with Kimbrew on May 7, 2015, at Kimbrew's office in Compton City Hall. They discussed Green Legendz's lack of proper permitting and how to prevent the business from getting shut down. Kimbrew said that most of Compton's dispensaries were slated to be shut down, but there was a plan to keep five dispensaries open. Kimbrew noted that discussions about this plan were ongoing, as the relevant parties were still "putting all the rules and regulations together." The UC asked whether Kimbrew could help arrange for Green Legendz to be one of those five shops, and Kimbrew responded affirmatively.

Kimbrew said that, for a $5,000 payment, he would get Green Legendz a permit and "make sure that nobody bothers you." Kimbrew explained that he would talk to the City Attorney and a local city councilmember, and the UC would "have nothing else to worry about at that point." Kimbrew handed the UC his business card and told the UC that he

would deal with anyone who gave the UC trouble. Kimbrew said that he wielded substantial influence due to his position: he "overs[aw] the City of Compton" in his capacity as a congressional staffer; he had a close relationship with city officials, including the City Attorney; he had authority over Code Enforcement and the Sheriff's Department; and he had the ear of the Congresswoman, who could get the FBI involved in local issues.

On May 15, 2015, the UC and Kimbrew had a follow-up phone call. Kimbrew noted that he had not heard back from the UC since their meeting, and that he was planning to close down Green Legendz by the next Friday. The UC said he had the funds to pay Kimbrew and still wanted to "do business." He asked to schedule another meeting, and Kimbrew agreed.

On May 19, 2015, the UC and Kimbrew met at a restaurant in Compton. They discussed Green Legendz's permitting problem again, including a warning letter from the City Attorney, and Kimbrew reaffirmed that "all of that I can make go away." He again committed to talking to the City Attorney and to Code Enforcement to keep them from interfering with Green Legendz's business. At one point, Kimbrew agreed that the $5,000 payment was "like a kickback." Toward the end of the meeting, Kimbrew hedged that "I would rather not take your money today . . . because I would rather make sure that I can deliver on my promise." The UC said that the funds were for Kimbrew to ensure that the two would have "a good relationship." Kimbrew responded that he could "guarantee" a good relationship, that the UC had his "undying support," and that he would "do everything [he] can to make sure [the UC] continue[d] to do business." The UC then passed $5,000 across the table, hidden under a restaurant menu. Kimbrew accepted the

money. Nonetheless, Green Legendz was shut down by the City a few days later.

Kimbrew was indicted on one count of attempted extortion by an employee of the United States, in violation of 18 U.S.C. § 872, and one count of bribery of a public official, in violation of 18 U.S.C. § 201(b)(2)(A). Following a jury trial, he was found guilty on both counts. Kimbrew moved for a judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure, but the motion was denied. Kimbrew then filed a motion for reconsideration, but that too was denied. Kimbrew was sentenced to 18 months in prison, three years of supervised release, restitution in the amount of $5,000, and a $4,000 fine.

## II.

## DISCUSSION

### A. Jurisdiction and Standard of Review

We have jurisdiction under 28 U.S.C. § 1291. We review a sufficiency of the evidence challenge de novo. *United States v. Doe*, 842 F.3d 1117, 1119 (9th Cir. 2016). We are "obliged to construe the evidence in the light most favorable to the prosecution, and only then determine whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Nevils*, 598 F.3d 1158, 1161 (9th Cir. 2010) (en banc) (internal quotation marks and citation omitted).

### B. Kimbrew's Bribery Conviction Was Supported by Sufficient Evidence

Kimbrew argues that the evidence was insufficient to support his bribery conviction. Specifically, he contends

that the government failed to prove that he could "make good" on his promises, and therefore he did not commit an "official act" within the meaning of the bribery statute. Kimbrew's argument is both factually and legally incorrect.

A public official commits bribery if he "corruptly demands, seeks, receives, accepts, or agrees to receive or accept anything of value . . . in return for . . . being influenced in the performance of any official act." 18 U.S.C. § 201(b)(2)(A). An official act is "any decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time be pending, or which may by law be brought before any public official, in such official's official capacity, or in such official's place of trust or profit." 18 U.S.C. § 201(a)(3).

The bribe recipient need not be the final decisionmaker. *McDonnell v. United States*, 136 S. Ct. 2355, 2370 (2016). "A public official may also make a decision or take an action on a 'question, matter, cause, suit, proceeding or controversy' by using his official position to exert pressure on *another* official to perform an 'official act.'" *Id.* So too, a public official may be liable under § 201 if he "uses his official position to provide advice to another official, knowing or intending that such advice will form the basis for an 'official act' by another official." *Id.* Moreover, the bribe recipient "is not required to actually make a decision or take an action on a 'question, matter, cause, suit, proceeding or controversy'; it is enough that the official agree to do so." *Id.* at 2370–71. It is immaterial whether the bribe recipient ever intended to follow through with his end of the bargain, so long as he agreed to perform the official act. *Id.*

Kimbrew contends that the government lacked evidence that he actually had any influence over the City Attorney or the Congresswoman. On the contrary, the evidence

presented at trial satisfies the relatively low burden applicable on sufficiency of the evidence review. *See Nevils*, 598 F.3d. at 1161, 1164. It is immaterial that the evidence was disputed, because we must view the evidence in the light most favorable to the prosecution and presume that the jury resolved all conflicts in the record against the defendant. *See id.*

The evidence shows that Kimbrew and the City Attorney knew each other, and that both worked out of Compton City Hall. Kimbrew acted as the Congresswoman's liaison in certain local affairs and attended city council meetings as her representative. Although the City Attorney denied that Kimbrew had any influence over him, the jury also heard recorded conversations in which Kimbrew attested that he did in fact have such influence. This factual dispute was a matter to be resolved by the jury, which could have reasonably believed Kimbrew's representations over the City Attorney's denial. The jury could have doubted that the City Attorney would implicate Kimbrew, particularly when doing so might cast a shadow on his own reputation as well. So too, the jury may have reasonably believed that planned testimony was less likely to be sincere than a surreptitiously recorded conversation. On this record, a rational jury could have reasonably concluded that Kimbrew in fact had the ability to exert the promised influence.

Similarly, the jury could have reasonably concluded that Kimbrew had a means of influencing the Congresswoman's actions. Kimbrew served on the Congresswoman's staff, and he represented her within the Compton area. Green Legendz was operating unlawfully within her district, and Kimbrew's job responsibilities included "bring[ing] information back that the [C]ongresswoman . . . should be aware of." Based on this showing, a rational factfinder could

have found that Kimbrew wielded the influence he said he did, i.e., that he could have brought the dispensary's illicit operation to the Congresswoman's attention, characterized it as a substantial problem within her district, and persuaded her to help get it shut down.

Finally, Kimbrew contends that it would have been impossible for him to help secure an operating permit for Green Legendz, because marijuana dispensaries were categorically unlawful in the City of Compton. Thus, his argument goes, there was no "official act," because permitting a dispensary "fell outside *any* official's purview[:] . . . it was not a matter either pending, or which by law could be brought, before any public official, anywhere." Kimbrew concedes that he represented to the UC that plans were underway to permit a limited number of marijuana dispensaries to operate in the City, but he argues that these representations were false. However, Kimbrew does not point to any evidence—let alone irrefutable evidence—to support his position. The jury reasonably could have taken Kimbrew's recorded statements at face-value, and accepted as true that the City had pending plans to permit a small number of marijuana dispensaries to operate. Therefore, viewing the evidence in the light most favorable to the government, the evidence supports the jury's conclusion that Kimbrew could have exerted influence to help obtain the promised permit at a later date— after the City's plans had come to fruition.

The statutory definition of "official act" contains broad temporal language that indicates the question or matter at issue need not *currently* be pending or capable of being brought before a public official. *See* 18 U.S.C. § 201(a)(3) (referring to questions or matters "which *may at any time* be pending, or which *may* by law *be brought* before any public

official") (emphases added). This language encompasses scenarios in which a briber might anticipatorily seek to induce official action relevant to a circumstance yet-to-come. For example, on the eve of anticipated marijuana legalization—but while its sale was still illegal—an entrepreneur might bribe an official to "reserve" his services to help obtain a future dispensary permit. A *quid pro quo* of that nature remains a private inducement attached to the provision of a "formal exercise of government power," *see McDonnell*, 136 S. Ct. at 2369–70, albeit a contingent one. But a bribe tied to a contingency is no less a bribe.

Kimbrew's permit-related promise fits that mold. Kimbrew represented that, in the near future, the City of Compton would permit a small number of dispensaries to operate. In response, the UC sought to make "arrangements" for Green Legendz to be one of those dispensaries. Against that backdrop, the absence of a permitting architecture at the moment of agreement is not dispositive. It is true that the contingency never came to be, and Green Legendz got shut down, but § 201 liability does not depend on an outcome; the offense is complete at the moment of agreement, and that agreement need not even be accompanied by the bribe recipient's genuine intentions to follow through.

Regardless, the prosecution was not required to prove that Kimbrew could achieve the outcome he promised. The relevant inquiry, instead, is whether Kimbrew agreed to "us[e] his official position to exert pressure on another official to perform an 'official act,' or to advise another official, knowing or intending that such advice will form the basis for an 'official act' by another official." *McDonnell*, 136 S. Ct. at 2372; *see also United States v. Hsieh Hui Mei Chen*, 754 F.2d 817, 825 (9th Cir. 1985) (concluding that "a person may be convicted of bribery [under § 201(b)(2)] even

though the action requested is not within the official's power to perform"). Nowhere in the statute or in the governing case law is there a requirement that the bribe recipient be able to *succeed* in exerting that pressure or persuading through his advice to realize the desired result.

A contrary reading would run afoul of the process-oriented, rather than results-oriented, nature of the offense. As noted, the offense of bribery is complete upon the agreement between the briber and the public official. *McDonnell*, 136 S. Ct. at 2370–71. The Supreme Court has emphasized that the official need not follow through to be found guilty. *Id.* The official can be convicted even if he never intended to perform the official act for which he was bribed. *Id.* at 2371. In short, execution is immaterial. It logically follows, then, that § 201 is not limited by the odds of success of the *quo* at issue.

The reach of § 201 is not unlimited. For example, the "official act" core of § 201 carries with it a requirement that there be a nexus between the public official's position and the *quo* he promises. But this only takes Kimbrew so far. His official responsibilities included engaging with the local Compton government, serving as a representative in that community, and informing the Congresswoman of any local activity of which she should be aware. Accordingly, the *quos* at issue bore a nexus to Kimbrew's official role.

\*    \*    \*

The case against Kimbrew was neither factually nor legally deficient, and a rational factfinder "could have found the essential elements of the crime beyond a reasonable doubt." *Nevils*, 598 F.3d at 1164.

**AFFIRMED.**